Filed 4/4/13  P. v. Hamer CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056315 |
| v. | (Super.Ct.No. FVI1101532) |
| ODIS THELMAR HAMER III, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John M. Tomberlin, Judge.  Affirmed.

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

# INTRODUCTION

On March 21, 2012, a first amended information charged defendant and appellant Odis Thelmar Hamer III with causing injury to another person while driving a motor vehicle under the influence of alcohol in violation of Vehicle Code section 23153, subdivision (a) (count 1); causing injury to another person while driving a motor vehicle with a blood-alcohol level of 0.08 percent or more in violation of Vehicle Code section 23153, subdivision (b) (count 2); and leaving the scene of an accident in violation of Vehicle Code section 20001, subdivision (a) (count 3). Pursuant to Vehicle Code section 23560, the amended information also alleged, as to counts 1 and 2, one prior Vehicle Code section 23153, subdivision (b), conviction, as well as enhancements under Penal Code section 12022.7, subdivision (a) (great bodily injury) and Vehicle Code section 23558 (bodily injury). At the arraignment on March 23, 2012, defendant pleaded not guilty to all counts.

On April 2, 2012, trial by jury commenced. After four days of trial, the jury returned verdicts. The jury found defendant (1) guilty on count 1 of the lesser included misdemeanor of driving under the influence in violation of Vehicle Code section 23152, subdivision (a); (2) guilty on count 2 of the lesser included misdemeanor of driving with a blood-alcohol level of 0.08 percent or more in violation of Vehicle Code section 23152, subdivision (b); and (3) guilty on count 3 of the felony leaving the scene of an accident in violation of Vehicle Code section 20001, subdivision (a).

On May 11, 2012, the trial court denied probation and defendant's motion to reduce count 3 to a misdemeanor under Penal Code section 17, subdivision (b).

2

Thereafter, the trial court sentenced defendant on felony count 3 to the middle term of two years in state prison. The court also sentenced defendant on misdemeanor counts 1 and 2 to the concurrent terms of 180 days in county jail with credit of 180 days time served on each misdemeanor count under Penal Code section 4019. Pursuant to Vehicle Code section 13350, the court found that a motor vehicle was used in the commission of count 1. The court also imposed a restitution fine in the amount of $300 under Penal Code section 1202.4, subdivision (b), and imposed, but stayed, a parole revocation fine in an equal amount under Penal Code section 1202.45, subdivision (b). Additionally, the court imposed a $70 court conviction and security fee for each convicted count, for a total of $210.

On May 17, 2012, defendant filed a timely notice of appeal.

## STATEMENT OF FACTS

On April 16, 2011, shortly after 10:00 p.m., the victims were driving home along Main Street in their silver Toyota Camry in Hesperia, California. Their vehicle entered the intersection of Main Street and Escondido Avenue on a green light. A Ford Mustang entered the same intersection and attempted to make a left turn on a red light directly in the path of the victims' oncoming Camry. The Camry struck the Mustang broadside as it turned left on the red light. The Mustang swung around, striking the passenger side of the Camry. The victims' Camry was inoperable after the collision.

The driver of the Camry sustained minor chipping on a tooth and some bruising on her neck, knee, and body.

3

The passenger of the Camry hit his forehead on the windshield, causing pain to his head, neck and shoulder. After the accident, his head remained sore and tender to the touch. He also suffered from increased shoulder pain from reconstructive surgery that had occurred approximately two weeks prior to the collision. He was prescribed pain medication for his head, and also used an anti-inflammatory after the collision.

At trial, both victims identified defendant as the driver of the Mustang at the time of the collision. Immediately after the accident, both victims saw defendant unsuccessfully attempt to drive away from the scene. However, the Mustang was damaged. The victims saw defendant exit the vehicle and walk away from the scene of the accident. According to the victims, defendant never (1) approached them after the accident; (2) offered any assistance; (3) tried to see if they were injured; or (4) provided any information to the victims such as his name, address, or vehicle registration.

At approximately 10:00 p.m., on April 16, 2011, San Bernardino County Deputy Sheriff Brimmer was on patrol along Main Street in Hesperia. Deputy Brimmer observed a black Ford Mustang, with front-end damage, on the shoulder of the westbound lane at the intersection of Main Street and Escondido Avenue. He noticed that the driver was sitting in the driver's seat of the vehicle, and that he was the sole occupant. At trial, Deputy Brimmer identified defendant as the driver.

Deputy Brimmer also saw another vehicle blocking the intersection. As soon as the deputy stopped his vehicle, a man and a woman ran up to him. They pointed at the Mustang and stated that the driver had just hit their Camry and was trying to get away. As the deputy approached the Mustang, he saw defendant exit the vehicle and walk away.

4

Deputy Brimmer identified himself as a sheriff's deputy and asked defendant to stop. Defendant turned, looked at the deputy, and started running away with a limp. The deputy chased defendant for about 200 to 300 feet, twice telling him to stop.

Deputy Brimmer caught up with defendant, grabbed his arm, and then detained him. The deputy handcuffed defendant and took him into custody. The deputy noticed that defendant smelled of alcohol. He also observed that defendant's eyes were watery and bloodshot. Deputy Brimmer escorted defendant to the area of his patrol vehicle.

Deputy McCurdy testified that he was assigned to "DUI enforcement" on April 16, 2011. Deputy McCurdy arrived at the scene of the collision just minutes after Deputy Brimmer arrived. Deputy McCurdy assumed responsibility as the primary investigator. At trial, Deputy McCurdy identified defendant as the driver of the Mustang.

Deputy McCurdy first encountered defendant sitting on the ground in handcuffs. The deputy checked to see if defendant showed any signs of alcohol intoxication. He observed that defendant's eyes were bloodshot and watery. The deputy also noticed that there was a strong odor of alcohol coming from defendant, and that defendant appeared to be disoriented and confused. Defendant was unable to respond readily to the deputy's questions. Defendant refused to submit to a preliminary breath test; he told Deputy McCurdy to "take him to the station." When the deputy asked defendant about the accident, defendant repeated his prior request to be taken to the station.

Deputy McCurdy inspected the two vehicles involved in the collision. Both the vehicles' airbags had been deployed. Inside the Mustang, Deputy McCurdy observed two 40-ounce beer bottles. One bottle was empty. The other was cold to the touch and

5

"had an inch to an inch-and-a-half of liquid" left in the bottle. The deputy found the empty beer bottle behind the driver's seat; he could not recall where he found the other bottle.

Before leaving the scene, the Deputy McCurdy arranged to have a law enforcement medical services nurse draw a sample of defendant's blood at 10:35 p.m. Deputy McCurdy observed the entire blood draw procedure. The deputy received the vial of defendant's blood at the scene; the nurse placed the sample into an evidence envelope, which was then sealed and marked for identification. Deputy McCurdy transported the sealed sample of defendant's blood to the sheriff's station and placed it in a storage locker. The sample was subsequently delivered to the sheriff's crime lab for testing and analysis.

In Deputy McCurdy's opinion—based on (1) his training and experience; (2) his investigations and observations; (3) the placement and location of the two vehicles and debris; and (4) statements of the parties involved—the front end of the Camry struck the Mustang while the Camry was proceeding on a green light. Defendant, as driver of the Mustang, was at fault. Deputy McCurdy described the collision as a broadside. The deputy concluded that while the Camry was proceeding through the intersection on a green light, it struck the side of the Mustang, which was turning left on a red light.

A criminalist from the San Bernardino County Sheriff's Department crime lab testified that based on her training and experience, she was familiar with correlation studies as to the effects of alcohol consumption on a person's ability to drive. She opined

that "regardless of the person's experience with alcohol, everyone is mentally impaired and cannot drive safely" with a 0.08 percent or more blood-alcohol level.

Following prescribed protocols and guidelines, the criminalist analyzed the sample of defendant's blood for alcohol content. Defendant's blood sample was analyzed twice as required by the standard testing protocol. The two results showed 0.266 and 0.264 percent blood-alcohol content. The reported results were 0.26 percent blood-alcohol content. Based on her background, training, and experience, the criminalist was of the opinion that a person with a 0.26 blood-alcohol content would be unable to operate a motor vehicle with the care and caution of a sober person. Such a person would be impaired both mentally and physically for purposes of driving.

## ANALYSIS

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. In his one-page letter, defendant argues that his felony conviction on count 3, leaving the scene of an accident, should be reduced to a misdemeanor. In essence, defendant argues that the trial court erred in denying his motion under Penal Code section 17, subdivision (b).

7

Penal Code section 17, subdivision (b), gives a trial court discretion to reduce an offense charged as a felony to a misdemeanor if the offense is a "wobbler," i.e., chargeable either as a felony or as a misdemeanor, upon imposition of a punishment other than state prison (Pen. Code, § 17, subd. (b)(1)) or by declaration as a misdemeanor after a grant of probation (Pen. Code, § 17, subd. (b)(3)).[1] (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 974.) A trial court's decision under section 17, subdivision (b), is reviewed for abuse of discretion. (*People v. Superior Court* (*Alvarez*), at pp. 976-977.)

Here, at defendant's sentencing hearing, his counsel moved to reduce his conviction on count 3 to a misdemeanor. Counsel stated that the reasons for his request were ". . . simple. First, [defendant] has one prior conviction as a misdemeanor and then he has this case. He has never, until now, served time in custody. Also, having participated, as we all did, in the jury trial, I think that this bears treatment as a misdemeanor. . . . [¶] . . . What I mean by that is simply that he needs to understand that he should not drink and drive. He's been in custody for quite some time now, and I think that is sufficient to teach him that lesson. [¶] The injuries in this case, the Court heard the testimony, I think that although his behavior was egregious, his blood alcohol content was high. . . . The jury found him not guilty of the DUI Causing Injury and therefore

---

[1] Penal Code section 17, subdivision (b), provides in relevant part: "When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail . . . it is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison . . . [¶] . . . [¶] (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor."

8

didn't reach the GBI allegation. They found him guilty of Leaving the Scene of the Accident."

After hearing argument from both defense counsel and the prosecutor, the trial court, in essence, denied the motion in sentencing defendant to state prison for the middle term of two years on count 3, "the offense of Hit and Run Resulting in Injury or Death in violation of Vehicle Code section 200001(A) [*sic*] as a felony. . . ." The court commented that that "it would be easy to justify giving [defendant] the aggravated term as requested by the probation department in this case." The court noted that it did not agree with defense counsel when he stated that defendant has "to learn to not drink and drive" since defendant already had a chance to learn that, but "didn't want to learn that."

It appears that defendant is arguing that the court's refusal to reduce the offense to a misdemeanor was an abuse of discretion because there was no finding of bodily injury.

Vehicle Code section 20001, subdivision (a), provides: "[t]he driver of a vehicle involved in an accident resulting in injury to a person, other than himself or herself, or in the death of a person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." Vehicle Code sections 20003 and 20004 require drivers to render reasonable aid to the injured person and to furnish identification to that person and law enforcement authorities. Vehicle Code section 20001 focuses on flight, not on the physical contact with the victim. "'"The gravamen of a section 20001 offense . . . is not the initial injury of the victim, *but leaving the scene without presenting identification or rendering aid*." [Citations.]'" (*People v. Wood* (2000) 83 Cal.App.4th 862, 866.) Thus, Vehicle Code section 20001,

9

subdivision (a), does not make criminal the actual accident or event that causes the physical contact with the victim. It merely addresses the duties of a driver, however otherwise innocent, once the accident and its attendant injuries have occurred.

In order to find defendant guilty of violating Vehicle Code section 20001, the evidence must show, among other things, that defendant, while driving a vehicle, was involved in an accident with another vehicle, that the accident caused injury to someone other than defendant, that defendant either knew that the accident had injured another person or "knew from the nature of the accident that it was probable that another person had been injured," and that defendant "willfully failed . . . [t]o stop immediately at the scene of the accident." (CALCRIM No. 2140.)

Defendant's contrary claims notwithstanding, the evidence presented at trial supports the jury's implied findings that defendant knew the accident caused injury or knew that it was probable that another person had been injured. Here, defendant's Mustang entered the intersection on a red light wherein the victims' Camry struck defendant's vehicle, and then defendant's vehicle swung around and struck the victims' vehicle, rendering it inoperable. Both victims sustained minor injuries. Nothing in the statute requires that the injuries be major or life threatening.

In a related argument, defendant seems to contend that the court erred in failing to instruct the jury on a "lesser misdemeanor charge hit and run." "A trial court must instruct on a lesser included offense if substantial evidence exists indicating that the defendant is guilty *only* of the lesser offense. [Citation.]" (*People v. Manriquez* (2005) 37 Cal.4th 547, 584, italics added.) On appeal, "we employ a de novo standard of review

10

and independently determine whether an instruction on the lesser included offense . . . should have been given." (*Ibid*.) Here, there was no error. As discussed *ante*, the evidence showed that defendant had a duty to provide aid because defendant knew from the nature of the accident, that it was probable, that another person had been injured.

Furthermore, defendant argues that the trial court erred in instructing the jury with CALCRIM No. 372, which stated: "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

Contrary to defendant's characterization, the flight jury instruction, as quoted *ante*, told the jurors that they could, but were not required to, consider evidence that defendant fled after the collision as circumstantial evidence that he was aware of his guilt. The instruction does not relieve the jury of its duty to find each element of the crime proved beyond a reasonable doubt.

Based on the above, we cannot find that the trial court abused its discretion in denying defendant's motion to reduce his conviction on count 3 to a misdemeanor.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.

11

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


McKINSTER _____
                                                                J.

We concur:



HOLLENHORST _____
          Acting P. J.



CODRINGTON _____
          J.